UNITED STATES POSTAL SERVICE
Approved Postal Provider®

CASEMAIL®

www.CaseMail.us

# CERTIFICATE OF MAILING

On: Oct 7, 2026

The United States Postal Service verified acceptance and mailing of the enclosed documents marked with the CASEMAIL ID, postage pre-paid with sufficient postage, to the following recipients:

**ON BEHALF OF:**

Nadja Yang
200 E Liberty St Lbby Unit 7760
Ann Arbor,MI 48107

**RECIPIENT:**

BARNES & THORNBURG LLP
AMY C. POYER
2029 Cntry Park E Ste 300
Los Angeles, CA 90067-2904

## MAILING HISTORY

Observations:

| | |
|---|---|
| MAILED ON: | Oct 7, 2026 |
| POSTAGE TYPE: | First Class Package |
| CASEMAIL ID: | CM-88115-0022.6 |
| USPS BARCODE: | Mailed |

**USPS SCAN**

**CASEMAIL ID**

CM-88115-0022.6

## Affirmation of Truth and Service

Pursuant to 28 U.S.C. § 1746

I, Joe L. Ruiz, declare that I am not a party to this action, am over 18 years of age, and that I mailed/served the above-referenced document(s) bearing the CaseMail ID listed above in the manner shown by depositing them in an official depository under the exclusive care and custody of the United States Postal Service, properly addressed and with sufficient postage, to the recipients listed above or on the attached mailing list.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and under the laws of the United States of America that the foregoing is true and correct, except as to matters stated upon information and belief, and as to those matters I believe them to be true, and I understand that this declaration may be filed in an action or proceeding in a court of law.

Digital Stamp

DATE: Oct 7, 2026

/S/ Joe L. Ruiz

Vertrius, Corp. d/b/a CaseMail
16192 Coastal Highway
Lewes, DE 19958

**Document Verification**

Copies of documents, along with applicable mailing certificates and delivery certificates, are archived and accessible to authorized parties.

Nadja Yang
200 E Liberty St Lbby Unit 7760
Ann Arbor, MI 48107
M: Nadja Yang <nadja@njy.dev>
C: tel:332.203.3124
Debtor and Appellant *pro se*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

San Francisco Division

| | |
|---|---|
| In re:<br>NADJA YANG,<br>*Debtor.* | No. 3:26-cv-07259-WHO<br>Hon. William H. Orrick<br>United States District Judge<br>**APPELLANT'S OPENING BRIEF** |
| NADJA YANG,<br>*Appellant,*<br>v.<br>REGENTS OF THE UNIVERSITY OF MICHIGAN, *et al.*,<br>*Appellees.* | On Appeal from the United States Bankruptcy Court for the Northern District of California<br>Bankr. No. 26-30507 WJL<br>Hon. William J. Lafferty III<br>United States Bankruptcy Judge |



CM-88115-0022

## Jurisdictional Statement

"On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (quoting *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900)). "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title," and such an appeal "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." 28 U.S.C. § 158(a). Each such appeal "shall be heard by a 3-judge panel of the bankruptcy appellate panel service established under subsection (b)(1) unless (A) the appellant elects at the time of filing the appeal . . . to have such appeal heard by the district court." *Id.* § 158(c)(1); Fed. R. Bankr. P. 8005(a); N.D. Cal. General Order No. 24, ¶¶ 2.01–2.02 (as amended Oct. 19, 2023). The Debtor and Appellant so elected: "Appellant elects to have the appeal heard by the United States District Court for the Northern District of California rather than by the Bankruptcy Appellate Panel, pursuant to 28 U.S.C. § 158(c)(1)." Bankr. Dkt. 29, at 4. The bankruptcy clerk transmitted the notice of appeal to this Court on July 10, 2026, Bankr. Dkt. 39, and the appeal was docketed here on July 15, 2026. ECF No. 1.

The court from which the record comes is a unit of this Court. "The judicial Power of the United States" is vested "in such inferior Courts as the Congress may from time to time ordain and establish," and it extends "to all Cases, in Law and Equity, arising under . . . the Laws of the United States." U.S. Const. art. III, § 1; *id.* § 2, cl. 1. Congress has power over "the subject of Bankruptcies," *id.* art. I, § 8, cl. 4, and it has chosen the court for cases under the laws it has made on that subject: "the district courts shall have original and exclusive jurisdiction of

all cases under title 11." 28 U.S.C. § 1334(a). A district court "may provide that any or all cases under title 11 . . . shall be referred to the bankruptcy judges for the district," *id.* § 157(a), who "constitute a unit of the district court to be known as the bankruptcy court for that district," *id.* § 151, and who "may hear and determine all cases under title 11 . . . referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." *Id.* § 157(b)(1). This Court has so provided: "This court hereby refers to the bankruptcy judges of this district all cases under title 11, and all proceedings arising under title 11 or arising in or related to cases under title 11." General Order No. 24, *supra*, ¶ 1.01(a). On June 8, 2026, the Debtor, an individual, filed a voluntary petition under chapter 7 of title 11 with the bankruptcy court for this district. Bankr. Dkt. 1. "A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." 11 U.S.C. § 301(a). From its commencement the case was a case under title 11, within the jurisdiction of section 1334(a) and the reference.

The appeal is from final orders. A final decision is the ruling "by which a district court disassociates itself from a case," and in bankruptcy the appeal as of right reaches as well the orders that "finally dispose of discrete disputes within the larger case." *Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015) (slip op. at 4) (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42 (1995), and *Howard Delivery Service, Inc. v. Zurich American Insurance Co.*, 547 U.S. 651, 657 n.3 (2006)). In a bankruptcy case "only plan confirmation—or case dismissal—alters the status quo and fixes the rights and obligations of the parties," and dismissal "lifts the automatic stay entered at the start of bankruptcy, exposing the debtor to creditors' legal actions and collection efforts." *Id.* (slip op. at 5–6). The Order Dismissing Case for Improper Venue dismissed the case. Bankr. Dkt. 24, at 2. The Order Denying Motion to Alter or Amend Order Dismissing Case disposed of

the motion directed to that dismissal, and in it the bankruptcy court purports to "decline[] to entertain any further requests for relief in this matter." Bankr. Dkt. 42, at 2.

An appeal under section 158(a) is taken "in the time provided by Rule 8002 of the Bankruptcy Rules," 28 U.S.C. § 158(c)(2): 14 days after the order appealed is entered, Fed. R. Bankr. P. 8002(a)(1), a period that a timely motion under Rule 9023 makes run instead "from the entry of the order disposing of the last such remaining motion." Fed. R. Bankr. P. 8002(b)(1)(B). The Order Dismissing Case for Improper Venue was entered June 24, 2026. Bankr. Dkt. 24. On June 29, 2026, within the 14 days that Rule 9023(b) allows, the Debtor moved under that rule to alter or amend it, Bankr. Dkt. 28, and concurrently filed the Notice of Appeal and Statement of Election. Bankr. Dkt. 29. A notice so filed, after entry of the order appealed and before the court disposes of the motion, "becomes effective when the order disposing of the last such remaining motion is entered." Fed. R. Bankr. P. 8002(b)(2). Until then it is "in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the district court or bankruptcy appellate panel." *Moldo v. Ash (In re Thomas)*, 428 F.3d 1266, 1269 (9th Cir. 2005) (construing the former Rule 8002(b)) (quoting Fed. R. Bankr. P. 8002 advisory committee's note to 1994 amendment). The order disposing of the motion was entered July 13, 2026, Bankr. Dkt. 42, and the notice took effect on its entry. The appeal is timely.

Both orders are before this Court. The notice appeals "from the Order Dismissing Case for Improper Venue (Dkt. 24), entered June 24, 2026, and from all orders entered in connection therewith or in disposition of the Debtor's Motion to Alter or Amend Order Dismissing Case for Improper Venue . . . filed concurrently herewith, to the extent any such order denies in whole or in part the relief requested therein." Bankr. Dkt. 29, at 1; *see* Fed. R. Bankr. P. 8002(b)(3). The second order rests on a jurisdictional ground. The bankruptcy court held

that "[u]nder controlling law of the circuit, a trial court lacks authority to alter the status quo established by an order that is the subject of a pending appeal," that it "lacks the jurisdiction to entertain any motions filed post dismissal," and that it "should deny the Motion for lack of jurisdiction." Bankr. Dkt. 42, at 1–2 (no citation in original). A reviewing court has "a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,'" *Steel Co.*, 523 U.S. at 95 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997)), and a bankruptcy court's conclusion that it lacked jurisdiction is a conclusion of law, reviewed de novo. *Montana v. Blixseth (In re Blixseth)*, 484 B.R. 360, 365 (B.A.P. 9th Cir. 2012). The order states that the Debtor "appealed the Dismissal Order to the United States District Court through her Notice of Appeal and Statement of Election on June 29, 2026 [Dkt. 29]." Bankr. Dkt. 42, at 1. The notice states: "This notice is filed concurrently with the motion pursuant to Fed. R. Bankr. P. 8002(b)(2) and becomes effective upon entry of the order disposing of the last such pending motion." Bankr. Dkt. 29, at 1.

## Questions Presented

A case under title 11 "may be commenced in the district court for the district . . . in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located" for the statutory period. 28 U.S.C. § 1408(1). A petition filed in an improper district may be dismissed or transferred "only after a hearing on notice to the petitioner, United States trustee, and other entities as the court orders." Fed. R. Bankr. P. 1014(a)(1)(B), (a)(2). On June 8, 2026, the Debtor and Appellant, an individual, commenced a case under chapter 7 in this district on a petition stating that the "Debtor's 'principal assets' are deposits at SoFi Bank, N.A., a WOS of NASDAQ: SOFI,

headquartered in San Francisco." Bankr. Dkt. 1, at 2. On June 23, 2026, on its own motion, without notice to the Debtor and without a hearing, the bankruptcy court dismissed the case for improper venue. The order states that "an individual debtor is required to have resided for at least 180 days in the district in which she elects to file her bankruptcy petition"; that "[a]ssuming that the proper venue for consumer bankruptcy would be where the debtor's assets are located, which is not the case, Debtor would apparently fail that test as well"; that "[w]ithout the required schedules and documents, the Court cannot determine where Debtor's assets are located"; that the petition's statement of the bank's headquarters "is technically correct, but the bank where she claims to have her assets is not located in San Francisco, but in Utah"; and, "[a]ccordingly," that "the Court HEREBY DISMISSES this case for improper venue." Bankr. Dkt. 24, at 1–2 & n.1.

The questions presented are:

1. Whether a bankruptcy court may dismiss a case under title 11 for improper venue on its own motion, without notice to the petitioner and without a hearing, when the rule that authorizes dismissal on that ground permits it "only after a hearing on notice to the petitioner," Fed. R. Bankr. P. 1014(a)(1)(B), (a)(2), and when the Fifth Amendment forbids a deprivation of property "without due process of law." The question is one of law, reviewed de novo. *Blixseth*, 484 B.R. at 365; *see Olomi v. Tukhi (In re Tukhi)*, 568 B.R. 107, 112–13 (B.A.P. 9th Cir. 2017) (reviewing "de novo whether the bankruptcy court identified and applied the correct legal rule" before asking whether a dismissal was an abuse of discretion) (citing *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc)).

2. Whether 28 U.S.C. § 1408(1), which lays venue of a case under title 11 in the district in which the "principal assets in the United States" of "the person or entity that is the subject of such case" have been located, applies to an individual according to its terms, or whether a bankruptcy court may add to it a condition that Congress did not enact, that an individual "is required to have resided for at

least 180 days in the district in which she elects to file." The question is one of law: "a bankruptcy court's interpretation of the venue statutes and its determination of whether a case is filed in an improper venue are reviewed de novo." *Blixseth*, 484 B.R. at 365.

## Summary of Argument

The bankruptcy court dismissed this case for improper venue on its own motion, without notice to the Debtor and without a hearing, on a record on which, in its own words, it "cannot determine where Debtor's assets are located." Bankr. Dkt. 24, at 2. Rule 1014(a) permits dismissal or transfer for improper venue "only after a hearing on notice to the petitioner." The Fifth Amendment requires no less. The order should be vacated.

The motion to alter or amend was denied "for lack of jurisdiction," on the premise that an appeal was pending. It was not. A notice of appeal filed before the court disposes of a timely motion under Rule 9023 "becomes effective when the order disposing of the last such remaining motion is entered," Fed. R. Bankr. P. 8002(b)(2), and the notice said so on its face. The bankruptcy court had jurisdiction to decide the motion, and the order denying it for want of jurisdiction should be vacated.

The dismissal rested on a rule of venue that Congress did not enact: that "an individual debtor is required to have resided for at least 180 days in the district in which she elects to file her bankruptcy petition." Bankr. Dkt. 24, at 1. Section 1408(1) opens the same districts to every "person or entity that is the subject of such case," the district of the principal assets among them, and draws no line between a natural person and a corporation or between "consumer bankruptcy" and any other case. The rule the order announced is neither a law of Congress nor uniform, and it would give an artificial person a choice denied to a natural

one. On remand the case should proceed before a different bankruptcy judge.

Venue lies in this district on the petition and the order alone. The Debtor's principal assets were deposits at SoFi Bank. A deposit is a debt, and a debt is located where the obligor is found; the enterprise that offers the account is headquartered in San Francisco and has chosen the courts of San Francisco County for disputes under the terms that govern access to it. Section 1408(1) asks which assets are principal, not what they are worth, and a debtor's deposits are principal by definition. The objection that a debtor may bring creditors before a distant court is answered by Congress, in section 1334(e) and Rule 7004; the Fifth Amendment does not import the Fourteenth Amendment's minimum-contacts standard; and inconvenience is a ground for transfer after a hearing, not a gloss on "principal assets."

The Debtor's convenience is the Debtor's to weigh. On remand, any transfer should be considered only on a party in interest's timely motion and after the hearing on notice that Rule 1014(a)(1) requires.

## Argument

### 1 The Case Was Dismissed Without a Hearing

On June 8, 2026, the Debtor and Appellant filed Official Form 101, "Voluntary Petition for Individuals Filing for Bankruptcy," electing chapter 7, in the United States Bankruptcy Court for the Northern District of California, San Francisco Division. Bankr. Dkt. 1. On June 23, 2026, that court signed an "Order Dismissing Case for Improper Venue," Bankr. Dkt. 24, at 1, entered on the docket June 24, 2026. The order states that the Debtor "appears to have elected to file her petition in San Francisco, California because her principal assets are held in a bank account with SoFi Bank, N.A., whose parent company, SoFi Technologies Inc., is headquartered in San Francisco," *id.* at 1; that "[a]ssuming that the proper


CM-88115-0022

venue for consumer bankruptcy would be where the debtor's assets are located, which is not the case, Debtor would apparently fail that test as well," *id.* at 2; that "it is unclear to the Court where Debtor's principal assets are located," *id.*; that "[w]ithout the required schedules and documents, the Court cannot determine where Debtor's assets are located," *id.*; that "she referenced SoFi technologies, which is apparently the parent company of SoFi Bank, where she appears to have assets located, as being headquartered in San Francisco," which "is technically correct, but the bank where she claims to have her assets is not located in San Francisco, but in Utah," *id.*; and, "[a]ccordingly, the Court HEREBY DISMISSES this case for improper venue." *Id.* The footnote reads: "The corporate headquarters for SoFi Bank, National Association is located at 2750 E Cottonwood Pkwy, Cottonwood Heights, UT 84121." *Id.* at 2 n.1. The court acted on its own motion, without notice to the Debtor and without a hearing.

Rule 1014(a)(1) provides that "[i]f a petition is filed in the proper district, the court may transfer the case to another district in the interest of justice or for the convenience of the parties," and that "[t]he court may do so: (A) on its own or on a party in interest's timely motion; and (B) only after a hearing on notice to the petitioner, United States trustee, and other entities as the court orders." Fed. R. Bankr. P. 1014(a)(1). Rule 1014(a)(2) provides that "[i]f a petition is filed in an improper district, the court may dismiss the case or may transfer it to another district on the same grounds and under the same procedures as stated in (1)." Fed. R. Bankr. P. 1014(a)(2).

"No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The words were intended "to convey the same meaning as the words, 'by the law of the land,' in Magna Charta," and due process "generally implies and includes *actor, reus, judex*, regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18



CM-88115-0022

How.) 272, 276, 280 (1856). Where a rule entitles a party to respond before judgment and the court enters judgment without the response, the rule is violated and so is the Clause: "due process does not countenance such swift passage from pleading to judgment," and "judicial predictions about the outcome of hypothesized litigation cannot substitute for the actual opportunity to defend that due process affords every party against whom a claim is stated." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465, 471 (2000).

The order was entered without notice and without an opportunity to be heard, on purported findings drawn from a record on which, in the court's words, it "cannot determine where Debtor's assets are located." Bankr. Dkt. 24, at 2. That is not the procedure Rule 1014(a) prescribes, and it is not due process of law.[1] The bankruptcy judges of this district "constitute a unit of the district court," 28 U.S.C. § 151, and this Court has "jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges," *id.* § 158(a)(1). This Court should vacate the Order Dismissing Case for Improper Venue, Bankr. Dkt. 24. 28 U.S.C. § 2106.

[1]The Honorable William J. Lafferty III, who signed the order under review, has sat in review of such a dismissal. In *Benzeen Inc. v. United States Trustee (In re Benzeen Inc.)*, No. CC-18-1185-FLS (B.A.P. 9th Cir. Mar. 6, 2019) (unpublished memorandum, which "may be cited for whatever persuasive value it may have," *id.* at 1 n.*), https://cdn.ca9.uscourts.gov/datastore/bap/2019/03/07/Benzeen%20Memorandum%2018-1185.pdf, the Bankruptcy Appellate Panel, before Faris, Lafferty, and Spraker, Bankruptcy Judges, *id.* at 2, heard an appeal "from the bankruptcy court's order sua sponte dismissing its case at a status conference and hearing on Benzeen's disclosure statement." *Id.* "There was no pending motion to dismiss, and the bankruptcy court did not give it notice that it was contemplating dismissal. We hold that the bankruptcy court denied Benzeen due process." *Id.* at 9. "Generally speaking, a court must give sufficient notice of its intention to dismiss a case and the opportunity for interested parties to be heard," *id.*, and "a court may not 'cut to the chase' in a manner that deprives a party of due process." *Id.* at 12 (quoting *Sanders v. United States Trustee (In re Sanders)*, No. CC-15-1344-FKiKu, 2016 WL 3971324, at *3 (B.A.P. 9th Cir. July 15, 2016)). "While the circumstances of the case are suspicious," the Panel vacated and remanded. *Id.* at 2, 13. The motion to alter or amend cited it, "(Faris, Lafferty, and Spraker, Bankr. JJ.)," as a memorandum in which "the BAP reversed a bankruptcy court's *sua sponte* dismissal entered at a hearing where the court had not provided the debtor with notice of its intention to dismiss." Bankr. Dkt. 28, at 8. The bankruptcy court was "not persuaded the Motion raises a substantial issue." Bankr. Dkt. 42, at 2.

## 2 The Motion to Alter or Amend Was Denied for Lack of Jurisdiction

Further undermining "public confidence in the integrity and impartiality of the judiciary," Code of Conduct for United States Judges, Canon 2A, the bankruptcy court then denied the Debtor's timely motion under Rule 9023 for want of jurisdiction, on the premise that an appeal was pending. On June 29, 2026, the Debtor filed "Debtor's Motion to Alter or Amend Order Dismissing Case for Improper Venue," under "Fed. R. Bankr. P. 9023; Fed. R. Civ. P. 59(e)," Bankr. Dkt. 28, at 1, and a "Notice of Appeal and Statement of Election," which stated: "This notice is filed concurrently with the motion pursuant to Fed. R. Bankr. P. 8002(b)(2) and becomes effective upon entry of the order disposing of the last such pending motion." Bankr. Dkt. 29, at 1. On July 13, 2026, the bankruptcy court entered an "Order Denying Motion to Alter or Amend Order Dismissing Case." Bankr. Dkt. 42, at 1. The order states that the Debtor "appealed the Dismissal Order to the United States District Court through her Notice of Appeal and Statement of Election on June 29, 2026 [Dkt. 29]," and that "[t]he Notice of Appeal was transmitted to District Court on July 10, 2026 [Dkt. 39]," *id.*; that "[u]nder controlling law of the circuit, a trial court lacks authority to alter the status quo established by an order that is the subject of a pending appeal [sic]," *id.* at 1–2 (no citation in original); that the court "is mindful that it has the ability to make an Indicative Ruling under Federal Rule of Bankruptcy Procedure 8008," *id.* at 2; and that it "is persuaded that it should deny the Motion for lack of jurisdiction." *Id.* The bankruptcy clerk's transmittal of the notice of appeal was filed in this Court on July 15, 2026. ECF No. 1.

A motion "to alter or amend the judgment under Rule 9023" is one of the motions that, if filed "within the time allowed by these rules," cause "the time to file an appeal" to run "for all parties from the entry of the order disposing of the last such remaining motion." Fed. R. Bankr. P. 8002(b)(1)(B). The time allowed is "14 days after the judgment is entered." Fed. R. Bankr. P. 9023(b). "If a party

files a notice of appeal after the court announces or enters a judgment, order, or decree—but before it disposes of any motion listed in (1)—the notice becomes effective when the order disposing of the last such remaining motion is entered." Fed. R. Bankr. P. 8002(b)(2). Rule 8008 applies "[i]f a party files a timely motion in the bankruptcy court for relief that the court lacks authority to grant because an appeal has been docketed and is pending." Fed. R. Bankr. P. 8008(a).

The motion was filed within 14 days after the order of dismissal was entered on June 24, 2026, and it was a motion "to alter or amend the judgment under Rule 9023." Fed. R. Bankr. P. 8002(b)(1)(B). A notice of appeal filed before the court disposes of such a motion "becomes effective when the order disposing of the last such remaining motion is entered." Fed. R. Bankr. P. 8002(b)(2). On July 13, 2026, the notice of appeal was not effective; it became effective upon the entry of the order under review. Rule 8008 addresses a motion the court "lacks authority to grant because an appeal has been docketed and is pending," Fed. R. Bankr. P. 8008(a); the appeal was docketed in this Court on July 15, 2026. The bankruptcy court had jurisdiction to decide the motion.[2] This Court should vacate the Order

[2] To be sure, the Order Denying Motion to Alter or Amend Order Dismissing Case, entered July 13, 2026, by the United States Bankruptcy Court for the Northern District of California (Lafferty, J.), Bankr. Dkt. 42, is what the Supreme Court calls a "drive-by jurisdictional ruling[]," *Steel Co.*, 523 U.S. at 91: it rests on a "controlling law of the circuit" for which it cites nothing, and on a "pending appeal" that, under Rule 8002(b)(2), did not exist until the order itself was entered. Bankr. Dkt. 42, at 1–2. It has since been read more freely still. Counsel for the Regents of the University of Michigan have told this Court that the order left the Debtor's motion for sanctions, filed June 15, 2026, Bankr. Dkt. 11, a proceeding "the bankruptcy court has already declined to entertain," since "[w]hether to retain jurisdiction over a proceeding after dismissal of the underlying case is a discretionary decision committed to the bankruptcy court" and "[t]hat court has exercised its discretion." "Specially [sic] Appearing Respondent's Opposition to Debtor's Motion to Withdraw the Reference of Sanctions Proceeding" at 1, *In re Yang*, No. 3:26-cv-07302-WHO (N.D. Cal. July 30, 2026), ECF No. 6. The order's word is "jurisdiction," and it is used to say that the court lacked it, over "any motions filed post dismissal." Bankr. Dkt. 42, at 2. The motion for sanctions was filed before the dismissal, as counsel's own chronology records, Opposition at 2, and the order does not reach it. A court that holds it has no power to act has not exercised a discretion whether to act, and the Debtor, who thinks the order plainly wrong, had not thought it capable of that. *See* Motion for Sanctions Under Rule 11, *In re Yang*, No. 3:26-cv-07302-WHO (N.D. Cal. Sept. 1, 2026), ECF No. 13 (pending). The Regents, served with the notice of appeal on July 8, 2026, Bankr. Dkt. 38, may offer their reading of the orders in this appeal, where the schedule provides for an appellee's brief. ECF No. 2.



CM-88115-0022

Case 3:26-cv-07259-WHO Document 93 Filed 10/14/26 Page 13 of 34

Denying Motion to Alter or Amend Order Dismissing Case, Bankr. Dkt. 42. 28 U.S.C. § 2106.

## 3 The Case Was Dismissed Under a Rule of Venue That Congress Did Not Enact

More troubling still, the bankruptcy court decided venue under a rule of its own making. The order states: "When an individual files a bankruptcy petition, the gating issue is this: where did the individual reside before filing the petition? Under 28 U.S.C. § 1408, an individual debtor is required to have resided for at least 180 days in the district in which she elects to file her bankruptcy petition. Debtor clearly does not reside in this district." Bankr. Dkt. 24, at 1. It continues: "Assuming that the proper venue for consumer bankruptcy would be where the debtor's assets are located, which is not the case, Debtor would apparently fail that test as well." *Id.* at 2.

Section 1408 provides: "Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district." 28 U.S.C. § 1408(1). The word "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1; see 11 U.S.C. § 101(41).

The order thus confines one class of persons, individuals, to one of the districts that Congress opened to every person. Section 1408(1) applies to "the person or entity that is the subject of such case," and it makes the same four districts available to each: the district of that person's domicile, of its residence,

of its principal place of business, or of its principal assets. It draws no distinction between a natural person and a corporation, and none between a "consumer bankruptcy" and any other case; a case "may be commenced" in any district that qualifies. Whether individuals should instead be confined to the district of their residence is a question for Congress, which has answered it. "All legislative Powers herein granted shall be vested in a Congress of the United States," U.S. Const. art. I, § 1, among them the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States," *id.* § 8, cl. 4. A rule of venue for "consumer bankruptcy," announced by a bankruptcy judge without citation and applied in one division of one district, is neither a law of Congress nor uniform. The Debtor is aware of no authority for it.

The order's rule would also give an artificial person a choice that it denies to a natural one. That a corporation is a "person" entitled to the equal protection of the laws was settled in the nineteenth century: "Under the designation of person there is no doubt that a private corporation is included." *Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania*, 125 U.S. 181, 189 (1888). The Fifth Amendment "does not contain an equal protection clause," but "discrimination may be so unjustifiable as to be violative of due process." *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Whether a natural person may claim the same protection against a classification that a court, rather than Congress, has drawn in favor of corporations is a question the Debtor reserves, and one this Court need not decide now. Were section 1408 open to the order's reading, the canon of constitutional avoidance would counsel against it: "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). Section 1408 is not open to the order's reading. The Debtor's reading is the one its text compels: the district of

a person's principal assets is a proper venue, and the petition, as the order itself records, invoked that basis. Bankr. Dkt. 24, at 1. It should not be necessary to reach the Constitution to set aside a rule of venue that no statute contains. If the bankruptcy court adheres to its rule on remand, the question will arise on a record and after the hearing Rule 1014(a) requires, and it can be presented then and on any appeal that follows.

On remand, the case should proceed before a different bankruptcy judge. Reassignment on remand is reserved for unusual circumstances, *Krechman v. County of Riverside*, 723 F.3d 1104, 1111 (9th Cir. 2013); *United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir. 1979), and is decided by weighing "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Krechman*, 723 F.3d at 1111–12 (quoting *United States v. Jacobs*, 855 F.2d 652, 656 (9th Cir. 1988)). "The first two factors are equally important and a finding of either is sufficient to support reassignment on remand." *Id.* at 1112. The test applies "to all proceedings on remand, not just retrials." *Arnett*, 628 F.2d at 1165 n.5.

The original judge is the Honorable William J. Lafferty III, United States Bankruptcy Judge, who signed both orders under review. Bankr. Dkt. 24, at 1; Bankr. Dkt. 42, at 1. Judge Lafferty has stated that, for "consumer bankruptcy," venue where the debtor's assets are located is "not the case," Bankr. Dkt. 24, at 2; that "[t]his Court is not persuaded that it would grant the Motion if there were to be a remand for that purpose," Bankr. Dkt. 42, at 2; and that "the Court declines to entertain any further requests for relief in this matter." *Id.* The case was dismissed without notice or a hearing, on a record on which the court "cannot



CM-88115-0022

determine where Debtor's assets are located," Bankr. Dkt. 24, at 2, and the timely motion to alter or amend was denied "for lack of jurisdiction." Bankr. Dkt. 42, at 2. The bankruptcy judges of this district "constitute a unit of the district court," 28 U.S.C. § 151, and this Court may "require such further proceedings to be had as may be just under the circumstances," *id.* § 2106. This Court should vacate the Order Dismissing Case for Improper Venue, Bankr. Dkt. 24, and direct that further proceedings on remand be had before a bankruptcy judge other than Judge Lafferty. 28 U.S.C. § 2106.

## 4 Venue Lies in This District Under 28 U.S.C. § 1408(1)

The case was dismissed for improper venue without notice or a hearing, on a record on which the bankruptcy court "cannot determine where Debtor's assets are located." Bankr. Dkt. 24, at 2. The Debtor argues venue on the petition and the order alone. The petition, at the line asking why the Debtor chose this district, states: "Debtor's 'principal assets' are deposits at SoFi Bank, N.A., a WOS of NASDAQ: SOFI, headquartered in San Francisco." Bankr. Dkt. 1, at 2. The order states that this "is technically correct, but the bank where she claims to have her assets is not located in San Francisco, but in Utah," and, in a footnote, that "[t]he corporate headquarters for SoFi Bank, National Association is located at 2750 E Cottonwood Pkwy, Cottonwood Heights, UT 84121." Bankr. Dkt. 24, at 2 & n.1. Whether venue lies on those facts is a question of law, reviewed de novo. *Blixseth*, 484 B.R. at 365. On those facts venue lies in this district.

### 4.1 The Deposits Are Located in This District

A case under title 11 may be commenced in the district in which the "principal assets in the United States" of the person that is the subject of the case "have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than . . . in any other district." 28 U.S.C. § 1408(1). "Any one of the four bases is sufficient to support proper venue." *Blixseth*, 484 B.R. at 365. The assets

here were deposits, and a deposit is a debt. "[D]eposits are debtor obligations of the bank." *Delaware v. New York*, 507 U.S. 490, 502 (1993) (emphasis and citation omitted). "A person with an account at a bank enjoys a claim against the bank for funds in an amount equal to the account balance." *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992). "Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979).

Where a debt is located was settled law when Congress wrote the word "located" into section 1408 in 1984. A debt cannot be possessed: "possession cannot be taken of a debt or of the obligation to pay it, as tangible property might be taken possession of." *Harris v. Balk*, 198 U.S. 215, 223 (1905). What substance it has is with the obligor: "whatever of substance there is must be with the debtor. He and he only has something in his hands. That something is the *res*." *Chicago, Rock Island & Pacific Railway Co. v. Sturm*, 174 U.S. 710, 716 (1899). And the obligor carries it: "The obligation of the debtor to pay his debt clings to and accompanies him wherever he goes." *Harris*, 198 U.S. at 222. Debts "as such have no *locus* or *situs*, but accompany the creditor everywhere, and authorize a demand upon the debtor everywhere." *Sturm*, 174 U.S. at 716–17 (quoting 2 Parsons on Contracts 702 (8th ed.)). A debt owed by a bank is therefore located, for the purposes of a venue statute, wherever the bank is found. That is how the Supreme Court reads "located" in a venue provision. The word "is a chameleon word; its meaning depends on the context in and purpose for which it is used," and "[i]n the context of venue, 'located' may refer to multiple places, for a venue prescription . . . presupposes subject-matter jurisdiction and simply delineates *where* within a given judicial system a case may be maintained." *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006). Under the former venue provision for national banks, "a national bank was located, and venue was therefore proper, in any county or city where the bank maintained a branch office." *Id.* at 315. The Ninth Circuit reads the situs of intangible property the same way: "attaching a situs to intangible

property is necessarily a legal fiction; therefore, the selection of a situs for intangibles must be context-specific, embodying a 'common sense appraisal of the requirements of justice and convenience in particular conditions.'" *Office Depot, Inc. v. Zuccarini*, 596 F.3d 696, 702 (9th Cir. 2010) (citation omitted). Applying that appraisal, it held that domain names "are located where the registry is located," *id.* at 703, which was the registry's headquarters in this district. For bankruptcy venue, the location is the one "most resonant with the functional concerns of the administration of the bankruptcy estate." *Blixseth*, 484 B.R. at 367 (quoting *In re Murrin*, 461 B.R. 763, 788 (Bankr. D. Minn. 2012)).

SoFi Bank, National Association is a national bank "whose parent company, SoFi Technologies Inc., is headquartered in San Francisco." Bankr. Dkt. 24, at 1; Bankr. Dkt. 1, at 2; *see also* SoFi Technologies, Inc., Annual Report (Form 10-K), at cover page, Glossary of Terms and Acronyms, Item 1, Item 2 (Feb. 17, 2026), https://www.sec.gov/Archives/edgar/data/1818874/000181887426000013/sofi-20251231.htm (listing 234 1st Street, San Francisco, California, as the "Address of Principal Executive Offices"; stating that "SoFi Technologies is a bank holding company, and SoFi Bank is a nationally chartered association," that "[a]s a bank holding company, we are subject to regulation, supervision and examination by the Federal Reserve," and that its principal properties include "California (San Francisco HQ, Sacramento)"; and defining "FRB" as "Federal Reserve Bank of San Francisco"); SoFi Technologies, Inc., Quarterly Report (Form 10-Q), at cover page (May 7, 2026), https://www.sec.gov/Archives/edgar/data/1818874/000181887426000037/sofi-20260331.htm (same address). As it happens, the FDIC lists the address the order's footnote recites, "2750 E Cottonwood Pkwy," Cottonwood Heights, Utah, as the bank's main office, and the bank's other offices as the "LIVE OAK BRANCH," the "YUBA CITY BRANCH 04," and the "SACRAMENTO OFFICE BRANCH," each in California and each "FULL SERVICE - BRICK AND MORTAR." FDIC, BankFind Suite, Locations, SoFi

Bank, National Association (FDIC Cert. 26881) (Oct. 2, 2026), https://api.fdic.gov/banks/locations?filters=CERT:26881. In 2022 SoFi "acquired Golden Pacific, a bank holding company," "Golden Pacific began operating as SoFi Bank," and "Golden Pacific's community bank business continues to operate as a division of SoFi Bank." Form 10-K, *supra*, at 170 (Note 2, Business Combinations). "Other than certain products acquired and offered through SoFi Bank, our products are all digital," *id.* at 6; SoFi offers them "all in one common mobile application," *id.* at 7; and its checking and savings accounts "provide a digital banking experience" "within our mobile platform," *id.* at 10. The accounts are offered and reached through "the SoFi website (located at www.sofi.com) and the SoFi mobile application," under a Terms of Use Agreement that governs "access and use of the online functions, products, and services made available to you by Social Finance, LLC and any and all of its subsidiaries and affiliates," "including but not limited to: SoFi Bank, National Association," and whose acceptance "is required to use the SoFi Site and to obtain any product or service offered on the SoFi Site." SoFi Terms of Use Agreement (last updated May 18, 2026), https://web.archive.org/web/20260624031140/https://www.sofi.com/terms-of-use/. Those terms provide: "You agree to submit to the personal and exclusive jurisdiction and venue of the state and federal courts located within San Francisco County, California." *Id.* ¶ 17. These are SoFi's published terms, of which this Court may take notice, Fed. R. Evid. 201(b)(2), (d), as the bankruptcy court took notice of the bank's headquarters address. Bankr. Dkt. 24, at 2 n.1. A forum-selection clause "represents the parties' agreement as to the most proper forum" and is "given controlling weight in all but the most exceptional cases." *Atlantic Marine Construction Co. v. United States District Court*, 571 U.S. 49, 63 (2013) (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31, 33 (1988)). By the terms that govern access to its accounts, SoFi has chosen California law and "the state and federal courts located within San Francisco County" for disputes under those

terms. A deposit that has no branch of account is located where the bank that owes it is found, and the enterprise that offers the account is headquartered in San Francisco and has chosen its courts for disputes under the terms that govern access to the account. On the assets basis of section 1408(1), this district is a natural venue, not merely a permissible one.

On the petition and the order, then, the Debtor's principal assets were located in this district throughout the period. Section 1408(1) is satisfied on its first clause, without resort to the comparative one. The petition identifies the deposits as the principal assets, and the order finds nothing to the contrary; it states that the court "cannot determine where Debtor's assets are located." Bankr. Dkt. 24, at 2. Even if the deposits had been placed with SoFi shortly before the petition, the statute "does not require assets to exist for the entire 180 days" and "does not require longevity of ownership, historical nexus, operational activity, or a qualitative business purpose." *In re Multi-Color Corp.*, No. 26-10910 (MBK), slip op. at 13 (Bankr. D.N.J. Mar. 16, 2026), https://www.govinfo.gov/content/pkg/USCOURTS-njb-3_26-bk-10910/pdf/USCOURTS-njb-3_26-bk-10910-0.pdf (venue proper on bank accounts opened within six weeks, and funded 16 days, before the petition). The breadth is Congress's. "[T]o supply omissions transcends the judicial function," *Iselin v. United States*, 270 U.S. 245, 251 (1926), and "[a]chieving a better policy outcome . . . is a task for Congress, not the courts." *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13–14 (2000). Convenience is the office of a different provision. A case may be transferred "in the interest of justice or for the convenience of the parties," 28 U.S.C. § 1412, "only after a hearing on notice," Fed. R. Bankr. P. 1014(a)(1).

Nor would an agreement to arbitrate change the answer. Even if the Debtor's disputes with SoFi were subject to arbitration, the deposits would be where they are: an arbitration clause governs how a claim against the bank is resolved, not where the bank is found. And such a clause could not displace the venue of the

case. "[I]t is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code," and "[t]his prohibition of prepetition waiver has to be the law; otherwise, astute creditors would routinely require their debtors to waive." *Continental Insurance Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1026 (9th Cir. 2012) (quoting *Bank of China v. Huang (In re Huang)*, 275 F.3d 1173, 1177 (9th Cir. 2002)). "The Bankruptcy Code preempts the private right to contract around its essential provisions." *Id.* (quoting *In re Pease*, 195 B.R. 431, 434–35 (Bankr. D. Neb. 1996)). A bankruptcy court "has discretion to decline to enforce an otherwise applicable arbitration provision" where "arbitration would conflict with the underlying purposes of the Bankruptcy Code," among them the "[c]entralization of disputes concerning a debtor's legal obligations." *Id.* at 1021, 1022 (internal quotation marks and citation omitted).

This Court should hold that venue of the case lies in this district under 28 U.S.C. § 1408(1) and vacate the Order Dismissing Case for Improper Venue, Bankr. Dkt. 24. 28 U.S.C. § 2106.

### 4.2 The Statute Asks Which Assets Are Principal, Not What They Are Worth

The petition states what the Debtor's principal assets were: "deposits at SoFi Bank, N.A." Bankr. Dkt. 1, at 2. The order does not find otherwise. Its only doubt about the principal assets is where they are: "it is unclear to the Court where Debtor's principal assets are located." Bankr. Dkt. 24, at 2. The case was dismissed on that record, without notice or a hearing. The Debtor takes the record as the bankruptcy court left it and argues on the petition and the order alone. Part 4.1 shows where the deposits are located. This part concerns what section 1408(1) asks of them, and the answer is that it asks only whether they are principal, not what they are worth.

Venue lies in the district in which the "principal assets in the United States, of the person or entity that is the subject of such case have been located"



CM-88115-0022

for the statutory period. 28 U.S.C. § 1408(1). Congress wrote the phrase in 1978, Pub. L. No. 95–598, § 241(a), 92 Stat. 2549, 2668 (former 28 U.S.C. § 1472), https://www.govinfo.gov/content/pkg/STATUTE-92/pdf/STATUTE-92-Pg2549.pdf, and enacted it in its present form in 1984, Pub. L. No. 98–353, § 102(a), 98 Stat. 333, 334, https://www.govinfo.gov/content/pkg/STATUTE-98/pdf/STATUTE-98-Pg333.pdf. The phrase has three parts, and none supplies a minimum. “Assets” takes none. The estate that a petition creates “is comprised of” “all legal or equitable interests of the debtor in property as of the commencement of the case,” “wherever located and by whomever held,” 11 U.S.C. § 541(a), (a)(1), and a deposit is such an interest, “a claim against the bank for funds in an amount equal to the account balance.” *Barnhill*, 503 U.S. at 398. “Assets” is plural, but “words importing the plural include the singular,” 1 U.S.C. § 1, so a single account qualifies, and a class of assets, such as a debtor’s deposits, is “assets” whether it is held in one account or several. “In the United States” confines the field to the debtor’s property in this country, not to the debtor’s wealth. A Russian company “responsible for approximately 20 percent of the oil and gas production in Russia” was an eligible debtor in Texas on “approximately $480,000” wired into a Texas bank account on the day of its petition, because “nominal amounts of property located in the United States enable a foreign corporation to qualify as a debtor under Section 109(a)” and “there is ‘virtually no formal barrier’ to having federal courts adjudicate foreign debtors’ bankruptcy proceedings.” *In re Yukos Oil Co.*, 321 B.R. 396, 402, 407, 411 (Bankr. S.D. Tex. 2005) (dismissing the case for cause on other grounds). An individual living in Ontario with “a $194 bank account” in Buffalo was an eligible debtor in the Western District of New York; the court set the “principal assets in the United States” clause beside section 109(a), held that “the governing statutes seem to permit ‘property in the United States’ to be the sole basis for a bankruptcy case here,” and held itself “without authority to examine the requisite quantity.” *In re McTague*, 198 B.R. 428, 428–

Case 3:26-cv-07259-WHO Document 93 Filed 10/14/26 Page 23 of 34

29 (Bankr. W.D.N.Y. 1996). The statute "seems to have such a plain meaning as to leave the Court no discretion to consider whether it was the intent of Congress to permit someone to obtain a bankruptcy discharge solely on the basis of having a dollar, a dime or a peppercorn located in the United States." *Id.* at 432. The basis is older than the phrase. Under the Bankruptcy Act of 1898, the courts of bankruptcy could adjudge bankrupt persons "who do not have their principal place of business, reside, or have their domicile within the United States, but have property within their jurisdictions," Act of July 1, 1898, ch. 541, § 2(1), 30 Stat. 544, 545, and "residence or domicile or the locus of the principal place of business is immaterial if there is property within the United States." *McTague*, 198 B.R. at 431 n.7 (quoting *In re Berthoud*, 231 F. 529, 532 (S.D.N.Y. 1916)). A bank deposit was such property, because "Congress in the Bankruptcy Law did not intend that there should be any fine distinctions." *In re Iglesias*, 226 B.R. 721, 723 (Bankr. S.D. Fla. 1998) (quoting *Berthoud*, 231 F. at 533). Nothing in section 1408(1) makes a resident's deposits count for less than a nonresident's.

"Principal" adds a rank, and the statute states no measure for it: no figure, no date of valuation, no unit of comparison. When Congress wants a figure in this title it writes one. Chapter 13 is open "only" to an individual who owes "noncontingent, liquidated, unsecured debts of less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000," measured "on the date of the filing of the petition," 11 U.S.C. § 109(e), and funds in an education account leave the estate only up to "$5,000," *id.* § 541(b)(5)(C). When Congress wants property of little worth disregarded it says so: a trustee may abandon property "of inconsequential value and benefit to the estate." *Id.* § 554(a); *see McTague*, 198 B.R. at 431 (contrasting section 554 with the unqualified "property in the United States" of section 109(a)). Section 1408 has neither a figure nor a qualifier. Nor does "principal" direct a court to measure the debtor's assets against one another and award venue to the largest. The Supreme Court rejected that



CM-88115-0022

reading of the sibling phrase, "principal place of business." The Ninth Circuit had asked whether a corporation's activity was "significantly larger" or "substantially predominate[d]" in one State, *Hertz Corp. v. Friend*, 559 U.S. 77, 82 (2010); the Court replaced that inquiry with a rule under which "[c]ourts do not have to try to weigh corporate functions, assets, or revenues different in kind, one from the other," *id.* at 96, because "administrative simplicity is a major virtue in a jurisdictional statute" and "[c]omplex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims," *id.* at 94. The phrase *Hertz* construed was borrowed from bankruptcy, *id.* at 87, and the lesson applies to the statute it came from. The courts that apply "principal assets" to corporate debtors have not confined the word to value. The question "is a factual inquiry, establishing the predicate for what ultimately is a mixed question of fact and law," *In re Houghton Mifflin Harcourt Publishing Co.*, 474 B.R. 122, 130 n.23 (Bankr. S.D.N.Y. 2012), in which a court "can consider the assets from a qualitative perspective as well, focusing on the importance of the assets in question," *id.* at 136; assets count "regardless of whether they have economic value," and "dollar signs, alone, do not carry the day," *Multi-Color*, slip op. at 15; and the stock of an inactive corporation that the debtor valued "at zero (0)" was property on which venue "could alternatively be based," because "the value of these assets does not affect the fact that they are of principal significance to the Debtor's past and present entrepreneurial plans." *In re Canavos*, 108 B.R. 55, 58 n.4 (Bankr. E.D. Pa. 1989). "Principal," in other words, asks for a reason why these assets come first. It does not ask for an appraisal.

The reason is in the word. An asset is property counted toward debts. Whatever of a decedent's goods "is of a saleable nature and may be converted into ready money, is called assets in the hands of the executor or administrator; that is, sufficient or enough (from the French *assez*) to make him chargeable to a creditor



CM-88115-0022

or legatee, so far as such goods and chattels extend," and "[w]hatever assets so come to his hands he may convert into ready money, to answer the demands that may be made upon him." 2 William Blackstone, Commentaries *510–11, https://avalon.law.yale.edu/18th_century/blackstone_bk2ch32.asp. Bankruptcy law has reckoned the same way since 1898. The courts of bankruptcy were invested with jurisdiction to "cause the estates of bankrupts to be collected, reduced to money and distributed," Act of July 1, 1898, ch. 541, § 2(7), 30 Stat. 544, 546; trustees were to "collect and reduce to money the property of the estates for which they are trustees," *id.* § 47(a)(2), 30 Stat. at 557; the trustee is so charged today, 11 U.S.C. § 704(a)(1); and a plan under chapter 11, 12, or 13 is measured, claim by claim, against what a liquidation to money would pay. *Id.* §§ 1129(a)(7)(A)(ii), 1225(a)(4), 1325(a)(4). Any other asset is principal, when it is, for what it will bring in money. Money is principal for what it is. A debtor's deposits therefore come first among the debtor's assets by the meaning of the term, whatever else the debtor owns and wherever it is. The order under review confines individuals to their residence, a rule that the statute has never contained. The Bankruptcy Appellate Panel has already refused one bankruptcy court's substitute for the statutory inquiry: "bright-line" rules that intangible assets "either have no location at all or are always located at the debtor's residence." *Blixseth*, 484 B.R. at 367. Because the Ninth Circuit "mandates a context-specific analysis for the particular purpose at issue," the Panel "respectfully disagree[d] with the bankruptcy court's 'one-size-fits-all' approach." *Id.* The order under review goes further than the rule *Blixseth* rejected. It does not locate an individual's intangible assets at the individual's residence; it disregards them, on the premise that venue "for consumer bankruptcy" is not "where the debtor's assets are located." Bankr. Dkt. 24, at 2.

Section 1408(1) draws no distinction among debtors, so what it means for one it means for all. Venue lay in New Jersey on bank accounts that "existed for

16 of the 180 days preceding the filing of the bankruptcy case" and "were not located in any other district," over the "'file anywhere' parade of horribles." *Multi-Color*, slip op. at 14. Venue lay in Pennsylvania on a single account receivable, "the burden of proof of the facts necessary to support the instant Motion" being "squarely upon" the objecting creditor, which had "not proven, by a preponderance of the evidence, that the Debtor's principal asset is not its account receivable." *In re J & L Plumbing & Heating, Inc.*, 186 B.R. 388, 392–93 (Bankr. E.D. Pa. 1995). A debtor living in Argentina with "only $522.00 in his bank account" had venue in the district of the bank: "Debtor's principal asset has its situs within this district, and venue is therefore proper in this Court." *Iglesias*, 226 B.R. at 723. A citizen living in the Bahamas whose "principal asset in the United States" was two accounts at a bank in the Northern District of New York, "*de minimis* though they may be," had not filed "in an improper district," because "[t]here is a presumption that the district where the bankruptcy petition is filed is the appropriate district for venue purposes." *In re Farmer*, 288 B.R. 31, 34 (Bankr. N.D.N.Y. 2002) (quoting *In re Handel*, 253 B.R. 308, 310 (B.A.P. 1st Cir. 2000)). Some bankruptcy courts have weighed the asserted assets against the rest of the debtor's property, asking whether "the debtor . . . has other assets that have greater value or are more important." *Houghton Mifflin*, 474 B.R. at 136. The comparison is made on a record, after a hearing, and the party challenging venue bears the burden of proof "by a preponderance of the evidence." *Multi-Color*, slip op. at 16. Here no party challenged venue, no hearing was held, and the order identifies no other asset; it states that the court "cannot determine where Debtor's assets are located." Bankr. Dkt. 24, at 2. On the petition and the order, the deposits qualified as principal assets of the Debtor under any reading of the word, and one asset is enough. 1 U.S.C. § 1.

A court that would deny this venue must either read into section 1408(1) a distinction between individuals and entities that the text does not draw, which


CM-88115-0022

is the course the order took and the one addressed in Part 3, or read "principal assets" more narrowly for every debtor, and unsettle the venue of every case that has rested on a bank account, a receivable, or the stock of an inactive corporation. The text supports neither course, and the Debtor's reading requires neither. It follows that a debtor whose deposits are held by a bank found in this district may commence a case here, whatever the balance and whatever else the debtor owns. The Debtor asks this Court to say so. The Supreme Court has refused to let the size of the sum decide a question of bankruptcy principle: "The amount of the indebtedness, or the proportion of wages assigned, may here be small, but the principle, once established, will equally apply where both are very great." *Local Loan Co. v. Hunt*, 292 U.S. 234, 245 (1934). The fresh start is "of public as well as private interest," *id.* at 244; the provisions of the bankruptcy law "are to be construed when reasonably possible in harmony with it"; and "[l]ocal rules subversive of that result cannot be accepted as controlling the action of a federal court." *Id.* at 245. *Local Loan* said that of state decisions. It is no less true of a rule announced by the bankruptcy court itself. An individual with an account at an online bank has, like a corporation with an account at the same bank, a district where the money is, and Official Form 101 says as much: the petition asks why the debtor chose the district and offers, beside residence, "I have another reason. Explain. (See 28 U.S.C. § 1408.)" Bankr. Dkt. 1, at 2. The Debtor checked that box, gave the reason, and was dismissed for it.

The objection to this reading, if one is made, will be that it opens to a debtor a court far from the creditors. The objection is not a constitutional one, and Congress has answered it. The court in which a case is commenced has "exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1). Process "may be served anywhere within the United States," Fed. R. Bankr. P. 7004(d); an insured depository institution is served

"by certified mail addressed to an officer of the institution," Fed. R. Bankr. P. 7004(h); and service "establishes personal jurisdiction over a defendant" "in a bankruptcy case" whenever "exercising jurisdiction is consistent with the United States Constitution and laws," Fed. R. Bankr. P. 7004(f). It is consistent. The Fifth Amendment does not "import the Fourteenth Amendment minimum contacts standard"; it "necessarily permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority." *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025) (slip op. at 12). "[W]hen Congress has undertaken to enact a nationwide service statute applicable to a certain class of disputes, that statute should be afforded substantial weight as a legislative articulation of federal social policy." *Id.*, slip op. at 17 (quoting 4 C. Wright, A. Miller, & A. Steinman, Federal Practice and Procedure § 1068.1, at 733 (4th ed. 2015)). That was the original understanding. "Personal jurisdiction at the Founding was a topic not of constitutional law, but of general and international law," and "[t]he Fifth Amendment simply never came into it." Brief of Professor Stephen E. Sachs as Amicus Curiae in Support of Petitioners at 8, 10, *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025) (Nos. 24-20, 24-151), https://www.supremecourt.gov/DocketPDF/24/24-20/341970/20250204175604486_Nos.%2024-20%2024-151%20Amicus%20Brief.pdf. "If a federal court renders a judgment under a personal-jurisdiction statute within Congress's enumerated powers, then it is acting within the scope of the sovereign authority conferred on the United States, and there is no Fifth Amendment personal-jurisdiction problem to be found." *Id.* at 17. Bankruptcy is among the "existing federal statutes" the brief listed, with antitrust and securities regulation, as assuming "that the federal government has broader personal-jurisdiction powers than it would have as one big state under *International Shoe*," *id.* at 24: "federal bankruptcy law enables the bankruptcy court to take jurisdiction of the debtor's property 'wherever located' throughout the world, 11 U.S.C. § 541(a) (2018), with

worldwide service of process and broad personal jurisdiction." *Id.* at 25. The Supreme Court reasoned the same way in 1838. The process of a federal court runs as far as Congress sends it: "Congress might have authorized civil process from any circuit court, to have run into any state of the Union. It has not done so." *Toland v. Sprague*, 37 U.S. (12 Pet.) 300, 328 (1838). "[I]ndependently of positive legislation, the process can only be served upon persons within the same districts." *Id.* at 330. For cases under title 11 the positive legislation has been supplied, in a rule Congress has itself amended. Fed. R. Bankr. P. 7004(d); Pub. L. No. 103–394, § 114, 108 Stat. 4118 (1994).

The Supreme Court reserved "the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U.S. courts," *Fuld*, slip op. at 14, and a concurrence would hold that the Fifth Amendment "places no territorial limitation on Congress's ability to call parties to answer," *id.*, slip op. at 21 (Thomas, J., concurring in judgment). This case is nowhere near the reserved question. A creditor of a domestic debtor called to a federal court in California is not a foreign defendant "summoned from the other end of the globe." Brief of Professor Stephen E. Sachs, *supra*, at 4 (quoting *Picquet v. Swan*, 19 F. Cas. 609, 613 (C.C.D. Mass. 1828) (No. 11,134)). Even if the Fifth Amendment required "an evaluation of several factors," among them "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," *Fuld*, slip op. at 20 (quoting *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113 (1987)), the burden of an inconvenient district is the burden Congress addressed in section 1412, by transfer "in the interest of justice or for the convenience of the parties," 28 U.S.C. § 1412, "only after a hearing on notice to the petitioner, United States trustee, and other entities as the court orders," Fed. R. Bankr. P. 1014(a)(1)(B). Inconvenience is a ground for transfer after a hearing. It is not a gloss on "principal assets," and it is not a ground for dismissal without one. What due process secures in this field is what it has

always secured. "Nothing can be more unjust, than that a person should have his rights passed upon, and finally decided by a tribunal; without some process being served upon him, by which he will have notice, which will enable him to appear and defend himself." *Toland*, 37 U.S. at 329; *see Fuld*, slip op. at 21 n.4 (Thomas, J., concurring in judgment) ("The concepts of notice and an opportunity to be heard are distinct from the Federal Government's authority to extend personal jurisdiction."). In this case the person whose rights were passed upon and finally decided without notice was the Debtor.

This Court should hold that a debtor's deposits at a bank qualify as "principal assets in the United States" within the meaning of 28 U.S.C. § 1408(1) and support venue in the district where the bank is found, whatever their amount and without regard to the value of the debtor's other property; that on the petition and the order the Debtor's deposits at SoFi Bank so qualified; and vacate the Order Dismissing Case for Improper Venue, Bankr. Dkt. 24. 28 U.S.C. § 2106.

**5 The Case Should Remain in This District on Remand**

"If a petition is filed in the proper district, the court may transfer the case to another district in the interest of justice or for the convenience of the parties," and it "may do so" "on its own or on a party in interest's timely motion" and "only after a hearing on notice to the petitioner, United States trustee, and other entities as the court orders." Fed. R. Bankr. P. 1014(a)(1); *see* 28 U.S.C. § 1412. The bankruptcy court has stated that it "is not persuaded that it would grant the Motion if there were to be a remand for that purpose," and that it "declines to entertain any further requests for relief in this matter." Bankr. Dkt. 42, at 2.

"The convenience of the parties" is the parties' convenience, and the petitioner has already spoken to the petitioner's. A party who chooses a district has weighed its own convenience. The Supreme Court calls that choice "the plaintiff's venue privilege," *Atlantic Marine*, 571 U.S. at 63 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964)), gives it weight in the transfer inquiry, *id.* at

62 n.6 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)), and has said what venue rules are for: "in most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Id.* at 63 n.7 (quoting *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84 (1979)). In bankruptcy, likewise, "the Debtor's choice of filing should rarely be disturbed" and the party seeking transfer must show that "the balance is strongly in favor of transferring venue." *J & L Plumbing*, 186 B.R. at 390 (quoting *In re Uslar*, 131 B.R. 22, 23 (Bankr. E.D. Pa. 1991)). Whether the interest of justice or the convenience of some other party warrants a transfer is a "fact-intensive" question, *Multi-Color*, slip op. at 10, for a party in interest to raise and a hearing to decide. In *Multi-Color*, venue rested on the accounts of a debtor subsidiary, MCC-Norwood, LLC, at a bank in Englewood Cliffs, New Jersey, "opened on December 19, 2025, and funded on January 13, 2026—16 days prior to the filing of the petition on January 29, 2026." *Id.* at 2, 7. The "Cross-Holder Ad Hoc Group" and the United States Trustee moved to dismiss or transfer the cases, *id.* at 1; the court held an evidentiary hearing, with testimony from three witnesses and cross-examination, and received post-hearing submissions, *id.* at 1–2, 4; and it declined to transfer. *Id.* at 28. It "respects the deference afforded to Debtors' choice of forum," a choice that "should not be disturbed unless Movants demonstrate by a preponderance of the evidence that transfer is appropriate," *id.* at 26, and it found that "[n]o party has taken issue with the fairness, costs or efficiency of this Court's continued administration of this case; nor has any party suggested that the Court's location poses difficulties for witnesses, stakeholders and their professionals," as "with all hearing[s] having been handled remotely, no one has had to leave the confines of their office." *Id.* at 24 & n.11.

The Debtor's convenience is the Debtor's to weigh. "The convenience of the parties" is not a warrant to move a case for the petitioner's own good over the petitioner's objection, and it would be a strange reading that made it one.

"On balance, the Debtor—albeit residing in Ann Arbor, Michigan—is favorably disposed toward the San Francisco Bay Area, as encompassed by the Northern District of California." Bankr. Dkt. 28, at 7 (citing 28 U.S.C. § 84(a)); *see Yang v. Lynch*, Adv. No. 26-03032 (Bankr. N.D. Cal.), Adv. Dkt. 13, ¶ 13 n.1 (quoting Bankr. Dkt. 28, Part II); Adv. Dkt. 1, ¶ 13 n.2 (same). *Cf.* Sharon Waxman, Opinion, *No One Really Wants to Move From Beverly Hills to Nashville*, N.Y. Times (Aug. 15, 2026), https://www.nytimes.com/2026/08/15/opinion/culture/ellison-nashville-paramount-hollywood.html (the title says it all). *But cf.* Maia, known professionally as mxmtoon (native of Oakland, California, and Gen Z singer-songwriter, since relocated to Nashville).[3]

It is, in any event, convenient. The United States Trustee holds the meeting of creditors in this division by video: the Northern District of California, San Francisco and Santa Rosa Divisions, "is implementing virtual section 341 meetings of creditors . . . for all chapter 7, 12, and 13 cases filed on or after May 1, 2024," to "be held by video conference, which will be conducted through the Zoom platform," with an in-person meeting only "in rare cases." U.S. Trustee Program, Region 17: Local Section 341 Meeting Information (updated July 24, 2024), https://web.archive.org/web/20260929190750/https://www.justice.gov/ust-regions-r17/region-17-section-341-meetings-2.

One inconvenience a self-represented debtor meets in this district is the bankruptcy court's own. Its procedures provide that "[u]nless permitted by the Court to file electronically, a pro se litigant shall prepare and file all petitions, pleadings and other documents with the Court on paper, and shall not have access

[3]Having only just looked out at the Santa Cruz Mountains on the way into Civic Center, AirTrain and then BART, straight off the plane from Denver, at a loss and, at the time, in no great doubt about it, the undersigned was perhaps thoroughly converted at some point proximate to the Waymo rides across the Bay Area, the weather being the entire liturgy; never mind the pilgrimage destinations, invariably disappointing, as such places are, or the abrupt retreat to Ann Arbor on an Apple Pay Clipper balance and the alarmingly abundant, pre-existing Delta Air Lines "eCredits" that could, somehow, still be mustered from a lounge at SFO.

to electronic filing," U.S. Bankr. Ct. N.D. Cal., Electronic Case Filing Procedures ¶ 17 (eff. Dec. 1, 2023), https://web.archive.org/web/20261004233712/https://www.canb.uscourts.gov/procedure/electronic-case-filing-procedures-effective-1212023, and that "[p]ro se parties . . . may not be Registered Participants unless permitted by the Court," *id.* ¶ 4 n.2, while "[t]he official file in all divisions shall be the electronic file" and "[a]ll documents filed in paper form will be scanned into the ECF System and will only be accessible electronically." Bankr. L.R. 5005-1(d) (N.D. Cal. eff. May 4, 2026), https://web.archive.org/web/20261004233850/https://www.canb.uscourts.gov/sites/default/files/attchments/Bankruptcy_Local_Rules_%28Effective%20May%204%202026%29%20with%201007-1%20Update.pdf. The district court of which the bankruptcy court is a unit, 28 U.S.C. § 151, leaves the choice to the party: "After manually filing case-initiating documents, pro se parties may file subsequent documents in the same case manually, or may register for ECF and file subsequent documents in the same case electronically." Civil L.R. 5-1(b) (N.D. Cal.); *see id.* 5-1(c)(5)(A). The bankruptcy court incorporates the Civil Local Rules by an itemized list, and the list omits Civil L.R. 5-1. Bankr. L.R. 1001-2(a). That is not a feature of the district. It is a feature of the bankruptcy court.

The Debtor reserves opposition to any motion to transfer that a party in interest may make. This Court should vacate the Order Dismissing Case for Improper Venue, Bankr. Dkt. 24, and direct that on remand the case not be transferred on the bankruptcy court's own motion, any transfer to be considered only on a party in interest's timely motion and after the hearing on notice that Rule 1014(a)(1) requires. 28 U.S.C. § 2106.

## Conclusion

This Court should hold that venue of the case lies in this district under 28



CM-88115-0022

U.S.C. § 1408(1); vacate the Order Dismissing Case for Improper Venue, Bankr. Dkt. 24, and the Order Denying Motion to Alter or Amend Order Dismissing Case, Bankr. Dkt. 42; and remand with directions that the case proceed before a bankruptcy judge other than the Honorable William J. Lafferty III, and that it not be transferred except on a party in interest's timely motion and after the hearing on notice that Rule 1014(a)(1) requires. 28 U.S.C. § 2106.

Dated: October 5, 2026

Respectfully submitted,

/s/ Nadja Yang

NADJA YANG, Debtor and Appellant *pro se*

Assisted-by: Claude Fable 5.1 via Claude Code